BECKMANN v. MEYER, *Appellant.*

1.  **Homestead.**  A homestead right acquired by the head of a family is not lost by the death of his wife or the removal of his children, if he continues to reside on the place.

2.  ————.  A homestead may be sold and another acquired with the proceeds, and the premises sold pass to the vendee discharged of judgment debts of the vendor.

3.  ————.  The visible occupancy of the premises as the head of a family, under a recorded title, fixes the character of the property as a homestead.

4.  ————: ESTOPPEL: ATTORNMENT.  The fact that A., the vendee of homestead property which was afterward sold under execution against the vendor, recognized the validity of the latter sale so far as to attorn to the purchaser at the sheriff's sale, does not estop him from asserting his rights by a proceeding to set aside the sheriff's deed.

5.  ————: SHERIFF'S SALE: RELEASE OF INCUMBRANCE.  Where the creditors of a vendor who has conveyed his homestead extinguish an incumbrance thereon, and sell the property under execution against the vendor, the purchaser at the sheriff's sale cannot have the original incumbrance enforced against the property in an action brought to set aside the sheriff's deed.  The release was executed without instigation from the debtor's vendee, and the purchaser at sheriff's sale cannot be relieved from the consequences of his erroneous impression that the homestead property conveyed was subject to the claims of the vendor's creditors.*

————

*These syllabi are taken from 7 Mo. App. 577.

| 75 | 333 |
| 99 | 234 |
| 75 | 333 |
| 43a | 13 |
| 75 | 333 |
| 114 | 54 |
| 75 | 333 |
| 131 | 691 |
| 75 | 333 |
| 150 | 451 |
| 75 | 333 |
| 153 | 248 |
| 82a | 382 |
| 75 | 333 |
| 165 | 37 |
| 75 | 333 |
| 93a | 515 |

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*H. C. Lackland* and *Theodore Bruere* for appellant.

*Chas. Daudt* for respondent.

HENRY, J.—The opinion of the court of appeals in this case satisfactorily disposes of the questions presented by the record herein, and its judgment is affirmed. All concur.

The opinion of the St. Louis court of appeals was delivered by LEWIS, P. J., as follows:

In 1860, the plaintiff's father, Henry Beckmann, Senior, purchased from one Werner a farm containing about thirty acres, and moved thereon with his family, adopting it as his home. He had a wife and an only son, the plaintiff herein, who attained his majority in 1867, and afterward married, but, except for a short time, continued to live with his father until after the sale of the farm under execution, as hereinafter stated. Mrs. Beckmann, the elder, died in 1870. On September 24th, 1872, a judgment was rendered in the circuit court in favor of Charles Teichmann & Co., and on March 5th, September 5th and September 8th, 1873, judgments were rendered in favor of other parties, all against Beckmann, Senior, and aggregating upwards of $7,000. On March 8th, 1873, the farm was conveyed from the father to the son for the expressed consideration of $1,800. On March 19th, 1874, the farm with other real estate, was sold by the sheriff under the judgment above mentioned, as the property of Beckmann, Senior, and was purchased by the defendant and others acting with him, who have since conveyed their interest to the defendant. This suit is for a cancellation of the sheriff's deed conveying the farm, on the ground that, as the

homestead of the defendant in execution the property was exempt from levy and sale.   The circuit court decreed for the plaintiff.

One defense was, that the deed from Beckmann, Senior, to Beckmann, Junior, was without consideration, and was fraudulent and void as against creditors.   There was no testimony to sustain this charge.   It was shown that the son had worked for his father, upon an understanding that he was to be paid $20 per month, for about six years after he became of age; that he never received any money and that, upon a settlement, the amount of consideration for the deed was reached by a calculation of the amount remaining due for the work.   It was also shown that the father had previously given to his son another farm and put him in possession thereof; that after its occupancy by the young man for about a year, no deed having been delivered, the father found an opportunity for a favorable sale of the land, and proposed to his son an exchange of the Werner farm for the other.   This was agreed to, and Beckmann, Junior, moved with his family back to the place which was still occupied by Beckmann, Senior.   Subsequently, the deed was executed and delivered, as before mentioned.

The question upon which the controversy chiefly turns is, whether any homestead right existed, that could be made available against the sheriff's sale.   It is insisted that Beckmann, Senior, was neither a householder nor the head of a family when the Teichmann judgment was rendered.   This and two other judgments, amounting in all to more than $14,000, ante-dated the deed to Beckmann, Junior.   But it cannot be disputed that the homestead right was complete at the time of Mrs. Beckmann's death, in 1870.   This being true, it remained unimpaired after that event, unless destroyed by some act of abandonment or voluntary relinquishment.   It seems to be settled, on general principles, that a homestead once acquired by the head of a family will not be defeated or lost by the death

or absence of his wife and children, if he continue to occupy it. Any other construction would render a husband who has been deprived of his family by accident or disease, or by their desertion without any fault of his, liable to be instantly turned out of his homestead by his creditors. *Silloway v. Brown*, 12 Allen 30 ; *Taylor v. Boulware*, 17 Tex. 74; *Myers v. Ford*, 22 Wis. 139. It appears in this case, that the old man continued to live on the farm after the death of his wife; and even after his conveyance to Beckmann, Junior, the father and the son with his family occupied the same house, with no apparent change in their domestic arrangements. Provisions were furnished sometimes by the father and sometimes by the son, and no accounts were kept between them. The proceeds of crops were generally collected by the old man. The testimony generally tended to show that the value of the farm was about $1,500; though at the sheriff's sale it was knocked off for $2,700. The law, in securing a homestead against creditors, does not render its humane provision ineffectual, by prohibiting an alienation of the premises. The householder may sell his homestead, and with the proceeds acquire another. This would be impossible, if the alienation of the first would subject it to judgment debts of the vendor. A judgment creates no lien upon a homestead, and, therefore, none will follow it into the hands of the vendee. *Green v. Marks*, 25 Ill. 221.; *Cole v. Green*, 21 Ill. 104; *Smith v. Allen*, 39 Miss. 469; *Smith v. Rumsey*, 33 Mich. 191; *Black v. Epperson*, 40 Tex. 162. By Wagner's Statute, 699, § 8, when a new homestead is acquired the former one loses its exemption from liability for debts, but this manifestly applies only to cases wherein the first is still retained as the property of the debtor. The concluding part of the section recognizes a power to sell one homestead and purchase another with the proceeds.

From all this it results that the Werner farm in the hands of the plaintiff was not liable to execution for the debts of his father, unless, as the defendant claims, the

plaintiff is estopped, by events which occurred at the sher-
iff's sale from asserting such exemption. It should be a
sufficient answer to all that is urged for the defense in this
connection, that the plaintiff does not appear to have been
a party to any transaction that could create an estoppel
against him. He gave notice of his ownership in the land
and protested against the sale. His deed had long been
on record. There was testimony tending to show that, on
the day of sale, the old man claimed a homestead right in
a certain corner house in the city of St. Charles, and that
appraisers were chosen, under the statute, who set it apart
to him at a valuation of $1,500. But no such proceedings
could affect any right of the plaintiff's, already vested in
him by the deed from his father. The defendant's claim
that the plaintiff participated in the setting apart of the
corner house as a homestead is not sustained by the testi-
mony. But were it clear that he did so, this could have
no possible influence to deprive him of a title duly estab-
lished upon the county records, and distinctly asserted
against the proposed sale of his property.

Much of the argument for defendant seems to assume
that the selection of a homestead remained with the debtor
at the time of the execution sale, notwithstanding his pre-
vious alienation of the actual homestead. This implies
that either the alienation of the homestead property ex-
tinguishes the exemption as to that particular property, or
else the right itself is merely inchoate and undefined, until
perfected by the appraisement and setting apart, after the
levy of execution. We have already shown the error in
the first proposition. The second is alike inadmissible. In
some of the states, the filing of a declaration or other au-
thentic act is required of the property owner, in order to
secure the homestead exemption in the first instance. In
Missouri, however, the recording of the deed whereby the
land is acquired, together with the visible occupancy and
use of the premises as a home, by the householder or head
of a family, are all that the law requires. The exemption

22—75

then dates from the filing of the deed for record. Wag. Stat., 698, § 7. In this case, the deed from Werner to Beckmann, Senior, was filed for record on March 29th, 1864. His subsequent occupancy and use fixed the character of the property as a homestead. Such was it character up to the conveyance to plaintiff. After that conveyance, Beckmann, Senior, had no further control of the property for any purpose. Whatever privileges might arise, or be denied him, as to a homestead in other lands, the rights vested in his vendee were not subject to disturbance.

It seems that at the time of the sale, an opinion prevailed among the execution creditors that inasmuch as the debtor was a widower without dependent family when the judgments were rendered, he was entitled to no homestead exemption of any sort. Hence, the deed to the plaintiff, being of later date than some of the judgments, was considered, as to them, a nullity. Beckmann, Senior, had, however, previously notified the sheriff in writing of his demand that a homestead exemption be recognized in the Werner farm. This notice was disregarded.

After all the property had been sold, except the corner house above mentioned, there remained a balance necessary to satisfy the executions of $104. It was finally agreed that, as an act of kindness to the aged debtor, the house, which was worth $1,500, should be sold under the executions, and, the creditors refraining from bidding, the plaintiff should be permitted to buy the property in his father's interest, for the balance required to settle the executions. This was done. It was singularly urged, as a defense to this suit, that in that transaction the debtor's claim of homestead exemption, if any he had, was satisfied. The proposition is repeated in argument here. But by what sort of logic an actual sale under execution is found to be a practical enforcement of an exemption from sale, we are unable to discover. That the plaintiff's acquiescence in such an arrangement for his father's benefit,

and his actual purchase in pursuance thereof, could operate an estoppel affecting his title to the Werner farm, is too preposterous for discussion. The sympathizing humanity of the creditors found expression simply in a movement which secured to them all that remained unpaid on their several claims. Their generosity would not permit them to outbid the plaintiff, when that would render them liable to pay over the resulting surplus to the debtor.

After the sheriff's sale, when it was generally agreed among all concerned, including a number of lawyers present, that there was no legal foundation for a homestead claim, the plaintiff remained on the Werner farm and paid rent for one year to the defendant and others, who had purchased it. There was a disagreement about the terms for a second year, whereupon the plaintiff surrendered possession. These facts, it is urged for defendant, constitute a distinct ground of estoppel against the plaintiff. We do not discover in them the essential elements of an estoppel. No definition of that term implies that, when a man through ignorance or mistake of the law, has yielded a part of his rights to an unjust claimant, he is, therefore, bound to surrender the whole.

In March, 1872, Beckmann, Senior, executed a deed of trust, conveying the Werner farm and other lands, to secure the payment of a note to Theodore Bruere, for $1,200. This incumbrance was ahead of all the judgments, and also of the conveyance to Beckmann, Junior. The defendant and the other judgment creditors made a joint purchase of this debt and security, and proclaimed to bidders at the sheriff's sale that any purchaser would take a title divested of the incumbrance, and that the trust deed would be released on the margin of the record immediately after the sale. This promise was duly fulfilled. The defendant now asks that, notwithstanding the release, the original incumbrance may be, in some shape, enforced in his favor against the plaintiff's title. The reasons suggested are, that Beckmann paid nothing on the trust debt,

and defendant has paid through the sheriff's sale, full value for the farm. There is no equity in this demand. The release was promised as an inducement to purchasers, and doubtless had its intended effect in securing to the creditors an increased sum for the satisfaction of their claims. It was deliberately executed, under no mistake or misrepresentation as to any matter of fact. The plaintiff did nothing to instigate the act, and it would be highly inequitable to permit the defendant to recede from it after it has accomplished its original purpose, merely because he may have been guided in the matter by unsound legal advice.