Stanley et al v. Snyder et al.

---

STANLEY ET AL V. SNYDER ET AL.

| 43 | 429 |
| 65 | 254 |
| f65 | 376 |
| 65 | 379 |
| 43 | 429 |
| f66 | 886 |
| 43 | 429 |
| 70 | 71 |
| 43 | 429 |
| f71 | 209 |
| 72 | 450 |
| 43 | 429 |
| j73 | 181. |
| 73 | 491 |
| f75 | 206 |
| 75 | 592 |

1. HOMESTEAD : *Not lost by death of wife and children.*
   A homestead estate when once acquired and still occupied by the owner is not lost by the death of his wife and arrival of his children at the age of maturity, or their removal from the premises. (Cockrill, C. J., dissenting.)

Stanley et al v. Snyder et al.

2. SAME: *Fraudulent conveyance of, no prejudice to creditors.*
Creditors cannot complain that a conveyance of a homestead was fraudulent to defeat the collection of their debts. They could not reach it if not conveyed, and the motives for the conveyance do not concern them.

APPEAL from *Drew* Circuit Court in Chancery.

Hon. J. M. BRADLEY, Circuit Judge.

*J. G. Williamson,* for appellant.

A voluntary conveyance, made to hinder, delay or defraud creditors, is void, as to creditors, the grantor being insolvent. *1 Conn.,* 525; *8 Ark.,* 745; *Bouvier Law D., Vol. 2. p.* 636; *Bump Fraud. Conv., p.* 296; *Gantt's Dig., Sec.* 2954.

The conveyance being fraudulent, the title never passed from H. D. Snyder, and the land was subject to execution. Even if Snyder was entitled to a homestead, by his attempted conveyance, abandonment of possession, and failure to select as such, he waived and relinquished it. *25 Ark.,* 101; *2 B. R.,* 174; *28 Ark.,* 494; *39 Miss.,* 468; *29 Ib.,* 407.

*J. G. Taylor,* for appellee.

To make a voluntary conveyance void as to creditors, either existing or subsequent, it is indispensable that it should transfer property which would be liable to be taken in execution for the payment of debts. *1st Story Eq. Jur., Sec.* 367. The statute 13 Eliza did not enlarge the remedies of creditors. *Id.,* nor does our statute. *Gantt's Dig., Sec.* 2954.

The owner of exempt property may voluntarily dispose of it, or transfer it even if it be with intent to hinder or delay creditors, without subjecting it the claims of creditors. 11

*Wis.*, 118; 23 *Id.*, 164; 33 *Id.*, 319; 45 *Id.*, 340; 27 *Minn.*, 116; 28 *Id.*, 544; 17 *Ill.*, 78; 21 *Id,,* 104; 88 *Id.*, 229; 96 *Id.*, 217; 90 *Id.*, 474; 44 *Iowa*, 613; 60 *Id.*, 539.

The holder of a homestead is as free to dispose of same as though he was not a debtor. As to the exempt property a debtor is considered as without creditors. 33 *Mich.*, 183; 46 *Id.*, 243; 39 *Miss.*, 469; 50 *Id.*, 34. See also 6 *Bush*, 515; 10 *Me.*, 161; 68 *N. C.*, 494; 70 *Id.*, 218; 8 *Neb.*, 174; 18 *Kans.*, 253; 4 *Ala.*, 521; 43 *Vt.*, 138; 14 *Ohio, St.*, 298; 11 *Allen*, 582.

One entitled to a homestead does not lose the right by the death of his wife and the departure of his children. *Thompson on Homesteads, Sec.* 72, and cases cited.

SMITH, J. Two actions were prosecuted to judgment in the year 1881, before a Justice of the Peace, by the appellant, Harrell, against H. D. Snyder, the father of the appellees. Executions were sued out and returned *"nulla bona;"* whereupon transcripts were filed in the office of the Clerk of the Circuit Court, whence executions were issued and levied on the tract of land in controversy. After due advertisement, sale was made of the land against the protest of the appellees, who claimed title under a conveyance executed to them by H. D. Snyder, after the contraction of the debt, but before the institution of the suits. At this sale the appellant Stanley purchased, and received from the sheriff a certificate of purchase. The present bill was filed by the children and grantees of H. D. Snyder against Harrel and Stanley for the purpose of having such certificate of purchase cancelled as an incipient cloud upon the title, and to enjoin further proceedings by execution against the property. The bill alleged, *inter alia,* that the tract contained only 140 acres, situate in the country and remote from any town and was worth not exceeding $1,000; that H. D. Snyder was an old citizen, a married man and the head of a family, and resided upon

the land both at the date of said conveyance and afterwards; that while the consideration expressed in said deed was nominal merely, yet the real consideration was that the grantees should furnish the grantor with a home and main-tenance for the remainder of his life, and that said judg-ments were not rendered for the purchase-money of said land, nor for specific liens, laborers or mechanics liens for improving the same, nor for taxes, nor for monies due by the debtor as an attorney, executor, administrator, guardian, receiver, or trustee of an express trust.

Harrell filed an answer and cross-bill, to which H. D. Snyder was made a party defendant. The material facts were admitted to be as stated in the original bill, except that H. D. Snyder was the head of a family within the meaning of the Homestead Law. On the contrary it was alleged that he had ceased to be such by reason of the death of his wife and the coming of age of his children. And it was claimed that his deed to his children was made to hinder, defraud and defeat his creditors, and particularly Harrell, of their just debts, he being at the time in embarassed circum-stances. And the prayer was, that this deed be declared fraudulent.

To the answer and cross-bill demurrers were sustained and Harrell declining to plead further, a final decree was was entered for the plaintiffs.

1. HOME-STEAD: Not lost by loss of family. The appeal raises this question: The existence of a family being necessary to the acquisition of a homestead, does a continuation of the right depend on a continuation of the family relation? The decided weight of anthority is, that a homestead estate, when once acquired and still occupied by the owner is not defeated or lost by the death of his wife or the arrival of his children at years of maturity. Thus, the Massachusetts statute of 1855, limited the home-stead exemption to a "householder having a family" and con-

tinued it to the widow and children after his death, but contained no provision as to its continuance in the husband after the death of the wife and departure of the children. Nevertheless, where the owner of certain premises lived upon them with his wife and son at the time of the passage of the act, it was held that he acquired under the statute a homestead estate therein which was not affected by the subsequent death of his wife and the coming of age and departure of his son, so long as the father continued to occupy the premises as his home. Said the court, per Gray, J.: "Any other construction would render a husband who had been deprived of his family by accident or disease, or by their desertion without any fault of his, liable to be instantly turned out of his homestead by his creditors." *Silloway v. Brown*, 12 *Allen*, 34; following *Doyle v. Coburn*, 6 *Id.*, 71.

The reason assigned is not very satisfactory, or at most, is one to be addressed to the political departments of the government. So that the decision seems to savor of what Jeremy Bentham calls judge-made law. Yet it has been generally followed. See *Thompson on Homesteads and Exemptions*, Sec. 70 *et seq.* and cases there cited; *Barney v. Lude*, 51 *N. H.*, 253; *Webb v. Cowley*, 5 *Lea* (*Tenn.*) 722, per *Cooper, J.*, *Beckman v. Meyer*, 75 *Mo.*, 333; *Taylor v. Boalware*, 17 *Tex.*, 74; *Kessler v. Draub*, 52 *Id.*, 575; *Blum vs. Gaines*, 57 *Id.*, 119; *Kimbrell Willis*, 97 *Ill.*, 494.

A contrary view was taken in *Cooper v. Cooper*, 24 *Ohio State*, 488; *Santa Cruz v. Cooper*, 56 *Cal.*, 339; and *Gallighan v. Payne*, 34 *La. An.*, 1057, upon the maxim that *cessante ratione, cessat et ipsa lex*. Compare also *Calhoun v. Williams*, 32 *Gratt.*, 18.

The constitution, which contains our homestead statute, has not in express terms anticipated and provided for every possible phase of the question. It therefore devolves upon

28———43

the courts to.construe and apply the law to new cases as they arise. Interpreting the law according to its spirit and following the current adjudications, we hold, though with some hesitation, that when the association of persons, which constitute the family, is broken up, whether by separation or the death of some of the members, the right of homestead continues in the former head of the family, provided he still resides at his old home.

.Credi- It is incumbent on a creditor, who complains of a fraud-
tor can not
complain of ulent conveyance, to show that his debtor has disposed of
·fraudulent
conveyance property that might otherwise have been subjected to the
of debtor's
homestead. satisfaction of his debt. Until this is done no injury appears. *Story's Eq. Jur.*, 367; *Meux v. Anthony*, 11 *Ark.*, 411; *Hempstead v. Johnson*, 18 *Id.*, 123; *Clinton v. Estes*, 20 *Id.*, 216; *Sale v. McLean*, 29 *Id.*, 612; *Clark v. Anthony*, 31 *Id.*, 546; *Erb v. Cole, Ib.*, 554.

Section 3 of Article IX, constitution of 1874, provides that the homestead of a resident married man, or head of a family, shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon, except for certain privileged debts. The legal effect of this provision is, that fraud cannot be predicated of a conveyance of the homestead, for the creditor could not have reached that with his execution if the debtor had retained it. The law excludes the homestead from all remedies of ordinary creditors in all courts. It resolves itself into this: that as to exempt property there are, within the meaning of the statute of frauds, no creditors. And as there is no restraint upon the debtor against selling or conveying such property, the motives with which such transfers are made do not concern the creditor. The debtor may sell, exchange or give it away and his creditor has no just cause of complaint; for being exempt, it is no more beyond his reach after transfer than it was before. In such alienations

there may be a bad motive but no illegal act. *Thomps. on Homest.*, *Section* 411 *et seq.*, *Wait on Fraud. Conv.*, *Sec.* 46 *and* 50 ; *Bump on Do., pp.* 45–6 ; *Freeman on Executions, Sec.* 138 ; *Smith v. Allen*, 39 *Miss.*, 469 ; *O'Conner v. Ward*, 60 *Id.*, 1037 ; *Duval v. Rollins*, 71 *N. C.*, 221 ; *Smith v. Ramsey*, 33 *Mich.*, 191 ; *Legro v. Lord*, 10 *Me.*, 165 ; *Pike v. Miles*, 23 *Wis.*, 168.

The cases of *Norris v. Kidd*, 28 *Ark.*, 485 ; *Chambers v. Sallie*, 29 *Id.*, 407 ; and *Jackson v. Allen*, 30 *Id.*, 110, arose and were decided under constitutional and statutory provisions which made a judgment a lien upon all the debtor's lands situate within the county, including his homestead, and which protected the homestead occupant in the use of the land only during the time of such occupancy : The right of the judgment creditor to make the property contribute to the satisfaction of his debt being restored by abandonment, removal or death of the debtor without leaving wife or infant children to succeed to his rights.

*Decree affirmed.*

COCKRILL, C. J., dissenting : The debtor in this case was once the head of a family, and the lands in question were his homestead ; but this relation ceased, and when he was no longer the head of a family but was still living on the lands as a home, he sold them. The conveyance was attacked by his judgment creditors as a fraud upon their rights, and it is admitted that this is true unless the debtor had a homestead in the lands at the time he conveyd them. If there was a homestead right in the debtor at that time, his creditors were not prejudiced by the conveyance, and, as is held in this case, cannot be heard to complain. The main question to be determined is, had the debtor a homestead under the law at the time of the conveyance complained of?

No one can look into the previous decisions of this court

and fail to see, that by its settled policy of construction, the primary object of the homestead laws has always been to provide for the family, and that the protection which enures to to the benefit of the debtor himself is merely incidental. As long ago as *McKenzie v. Murphy*, 24 *Ark.*, 155, Mr. Justice Fairchild for the court said, of a statute not materially varying from our present constitutional provision in this respect, that it intended no individual benefit for the head of the family, that "disconnected from the family, the head of it was entitled to no consideration." As late as *Harbison v. Vaughn*, 42 *Ark.*, 539, the policy was re-affirmed in almost the same language. Without awaiting a change in the law, the court now awards the debtor a homestead, not to protect his family against the vicissitudes of fortune, as was said in *Ward v. Mayfield* in 41 *Ark.*, 94, but as a solace in his loneliness for their loss. What has heretofore been termed as a mere privilege by the court, dependent on conditions imposed by the written law, is now erected into an estate, not to be forfeited or defeated by the absence of the condition which inspired the law, and without which the privilege could not be created, *i. e.*, the marital relation or a dependent family.

Upon the question as to whether the privilege of the homestead continues when the debtor ceases to be the head of a family, the Supreme Court of California, in *Revalk v. Kramer*, 8 *Cal.*, 66, said : "The leading idea upon which the constitution and statute are both predicated, is the protection of the family. To carry out this intent, the homestead of the head of the family is protected from forced sale. * * * But unless the person is the head of a family, the right of homestead cannot exist. And cannot the same person at one time be the head of a family, and not at another? And if the privilege is an incident to a certain state, and that state itself ceases, why should not the incident fall with it?

Stanley et al v. Snyder et al.

As the primary object of the law was the protection of the family, when the family ceases to exist the reason for the privilege is gone; and why should not the privilege itself also cease? As the end contemplated by the law can no longer be attained, why should the means be preserved when they are no longer wanted? As the law will not allow an individual the right of homestead before he becomes the head of a family, why should it allow him the right after he ceases to be such? The only reason why the law will not allow it in the one case is equally applicable to the other. When an individual has not been, or has ceased to be, the head of a family, the law cannot anticipate that he will thereafter become such in either case. When he does in fact become the head of a family the law protects him for their benefit. He is the representative of the family. But when there is no family to protect will the law defeat the just claims of creditors for the purpose of accomplishing no beneficial end?

It is true the party once had a family, and he also once had protection for that family; but since the family has ceased to exist the protection is not needed. The law is intended to protect individuals while bearing certain relations to each other. When that relation ceases, the cause for the protection is gone. The reason ceasing, the rule ceases. The privilege and responsibility must go together—one is rightly dependent upon the other. When the individual no longer has the care of a family, the law should not still protect him as if he had; he should only be protected as others are who are at present in the same state. The law does not look to his past or future, but to his present condition."

To the same effect are the cases of *Cooper v. Cooper*, 24 *Ohio St.* 488; *Gallighan v. Payne*, 34 *La. An.*, 1057; *Blackwell v. Broughton*, 56 *Ga.*, 392–3; *Heard v. Downer*, 47 *Ib.*, 631; *Jackson v. Parrott*, 68 *Ib.*, 490; *Green v. Marks*, 25 *Ill.*, 221.

*In Calhoun v. Williams,* 32 *Gratt.,* 18, the facts were that the aged father and mother of the debtor lived with him at his home and were dependent upon him. After their death, and while the debtor was still occupying his old home, he was proceeded against by a creditor and the court refused to allow the exemption, saying it was not the design of the statute to enable a man, who had neither wife nor child nor others dependent on him, to withhold his property from the payment of his debts; that the statute was intended for the benefit of the family.

The cases cited by the court from Illinois, Texas and Tennessee seem to be determined on the peculiar wording of statutes which differ from our constitutional provisions, and are not therefore authority to sustain the general principle announced by the court in this case.

In Texas the statute provides that the right of homestead shall remain if a constituent of the family remains, and the court held that the language included a surviving husband as well as a surviving wife.

At the time of the rendition of the decision in the 97*th Ill., supra,* the statute of that state extended the exemption to the widower just as to the widow, and the decision turned on the phraseology of the statute.

It is said in *Barney v. Leeds,* 51 *N. H., supra,* that that case as well as the Massachusetts cases, are " predicated upon the idea that the homestead exemption is for the benefit of the debtor as well as the family, and that the California cases above cited went upon the theory that the design of those laws was to protect the family; that the protection of the family from dependence and want is the object of all homestead laws."

We have the authority of this court to sustain the latter view from its earliest declaration upon that subject to *Harbison v. Vaughn, sup.,* determined in 1884.

The Iowa statute puts the question to rest by declaring that "a widow or widower, though without children, shall be deemed the head of the family while continuing to occupy the house used as such at the time of the death of the husband or wife." The court in this case, under the asserted right to apply the law to new cases which the framers of the constitution did not anticipate or provide for, virtually interpolate this provision into that instrument. A liberal construction should be given to exemption laws to aid them in their humane policy, that is, the protection of the family, but the courts cannot, by construction extend their protecttion to those not named in the terms. Believing that both the better reason and the weightof authority sustain this view, I think the judgment of the court below should be reversed.