## THE STATE OF MISSOURI

AT THE

## APRIL TERM, 1885.

85   413
43a   13
85   413
114   54

85   413
93a   515

---

LEAKE *et al.* v. KING, *Appellant.*

Homestead : ABANDONMENT : HEAD OF FAMILY. A husband with his wife occupied premises in this state as a homestead. until forced to leave about the close of the war, by the disturbed condition of the country, when they removed to Iowa, where he shortly afterwards died. The wife who had no children then returned to the homestead and resided thereon, keeping house with her brother. *Held,* (1) There was no abandonment of the homestead, and (2) that she was the head of a family within the meaning of the homestead law.

*Appeal from Clinton Circuit Court.*—HON. G. W. DUNN, Judge.

REVERSED.

*J. M. Lowe* for appellant.

(1) The defendant was the head of a family and entitled to the land as a homestead. *Brown v. Brown,* 68 Mo. 388. And she took the premises in fee on the death of her husband. 68 Mo. 388, and 57 Mo. 380. (2) There was no abandonment of the homestead. The latter must be voluntary. *Moss v. Warner,* 10 Cal. 296. Mere re-

(413)

moval does not raise a presumption of abandonment. *Ives v. Mills*, 37 Ill. 75; *Kitchen v. Borgevin*, 21 Ill. 40; 20 Tex. 96.

*Thomas E. Turney* for respondents.

The debt for which the judgment was rendered was a debt of the defendant in this suit, contracted since the death of her husband. The land, therefore, if exempt as a homestead, must be so either because the defendant was or is now the head of a family. It will hardly be contended that she was the head of a family during the lifetime of her husband. She received the land from him exempt from *his* debts, because *he* was the head of a family, *she* constituting the family. The case of *Beckman v. Meyer*, 75 Mo. 333, has no application in this case. Beckman had been the head of a family, and as such entitled to the land in the suit as a homestead. By death and other causes the famliy no longer existed, and the court very properly said that the homestead right once acquired was not lost to Beckman, who was still residing on the land. But in this case the appellant is the head of a family *now*, or she never has been. The evidence shows that the appellant, who is sixty-five years of age, is living on the land, and that an unmarried brother of sixty is living with her. There is no evidence that either is dependent on the other. It is insisted that this evidence is not sufficient to establish the existence of a family. There is neither a legal nor moral obligation on either to support the other. Thompson on Homesteads, secs. 45 and 46. But for the fact that they have a common residence, the idea that they constitute a family would never have been entertained by any one. *Whalen v. Cadmen*, 11 Iowa 226.

Per Curiam.—This is an action of ejectment to recover possession of the southeast quarter of the northeast quarter and the northeast quarter of the southeast

quarter of section eigth, township fifty-five, range thirty. The answer was a general denial.

The plaintiffs, it seems, are step-sons of the defendant. In October, 1880, they commenced a suit before a justice of the peace against the defendant on an account and recovered judgment for one hundred and two dollars; filed a transcript of the judgment in the office of the clerk of the circuit court, sued out execution therefrom and levied on the land in controversy; bought it at that execution sale, and brought this suit for recovery of possession. To maintain the issues on their part, plaintiffs read in evidence the sheriff's deed.

Defendant then introduced Edwin Leake, one of the plaintiffs, who testified as follows: "Defendant is my step-mother; the land in controversy was the property of my father at the time of his decease. He and defendant, his wife, resided upon it and occupied it as their home up to and during the war. About the time of the close of the war, or just after, my father and family left on account of the perilous condition of the country, and went to Iowa, where he shortly afterward died. Defendant returned immediately and has lived on the land in controversy ever since. My father never bought land anywhere else. Defendant is about sixty-five years old."

Mr. Sweat: "Defendant is my sister. She and her husband, now deceased, left the land in controversy about the close of the war on account of the unsettled condition of the country, as testified by plaintiff. Her husband died, seized of the land in controversy on the twenty-first day of April, 1866. Defendant, immediately after her husband's death, returned to their former home, and has lived on the land in controversy ever since. Her husband, before his death, nor has she since acquired any other homestead. No children were born to them, nor has she ever had any. Defendant and myself constituted all the family since the death of her husband.

She is about sixty-five years of age. I am sixty and unmarried."

The defendant then asked the following declaration of law: "The court declares the law to be that under the pleadings and evidence, the judgment must be for the defendant," which the court refused.

There was some other evidence, which it is not important to notice, as it cuts no figure in the determination of the case. There was judgment for the plaintiff, from which the defendant appeals to this court.

I. The only important and controlling question in this case is, as to the exemption of the land under the homestead law. And it does not seem under the facts and circumstances of this case a solution of that question should be difficult. The evidence tends to prove, and, indeed, there is no controversy about the facts, that the defendant's husband was the owner of the land in 1866, and he and defendant, as husband and wife, were then residing on it, and as far as this case shows, he was not in debt. The plaintiffs, the sons of the husband, resided with their father. That, during that year (1866) as one of the plaintiffs swears, "my father and family left on account of the perilous condition of the country and went to Iowa, where he shortly afterwards died. Defendant returned immediately and has lived on the land in controversy ever since. My father never bought land anywhere else. Defendant is about sixty-five years old." This state of facts would not constitute abandonment of the homestead, and no point of that kind is made by the respondent. Thompson on Homestead, sec. 263, *et seq.* Here the defendant left the homestead by reason of "the perilous condition of the country," and the childless wife "immediately" returned after the death of her husband.

II. But the point relied on by the respondent is, that the defendant is not "the head of a family," and, hence, cannot take advantage of the homestead law. And

to sustain his position, refers to *Whalen v. Cadman*, 11 Iowa 226, which, we think, is an authority just to the reverse. The language of the statute is: "The homestead of every housekeeper, or head of a family, consisting of a dwelling house," etc. R. S. 1879, sec. 2689. The reading of the exemption under executions is different, to-wit: "when owned by the head of the family." R. S., sec. 2343. But the case of *Brown v. Brown*, 68 Mo. 388, decides that where the owner of a farm rented it, and occupied but one room in the house, upon an agreement with a tenant that he and his family should come into the house, and keep house, that that did not make the tenant the head of the family within the meaning of the homestead law. In that case the wife had abandoned her husband before his death, and they were not living together at the time of the husband's death, and the husband died in a few months after the arrangement was made with the tenant. It was held the wife could claim the homestead. In *Beckman v. Meyer*, 75 Mo. 333, it is said: "It seems to be settled, on general principles, that a homestead once acquired by the head of a family will not be defeated or lost by the death or absence of his wife or children, if he continues to occupy it." *Silloway v. Brown*, 12 Allen 30; *Taylor v. Boulware*, 17 Tex. 74; *Myers v. Ford*, 22 Wis. 139.

In the case at bar the evidence clearly shows that the husband had lived on the premises with his wife, until forced to leave by the disturbed condition of the country. That immediately after his death, his wife returned to the homestead and resided there for something like fourteen years, keeping house with her old brother, but was without husband or child. That she is first sued by her step-sons, the plaintiffs, for a debt of one hundred and two dollars, and her land sold and bought in by them, and now it is said she is not the head of a family and cannot claim her homestead. Because she was so unfortunate as to lose her husband, and had no children

of her own, and no other family except her brother, now she is to be deprived of her homestead and turned out into the world. The humane provisions of the homestead law were intended to secure a habitation and dwelling place for a man and his wife and family against the demands of their creditors. And especially to secure the helpless children and aged widow against the rapacity of creditors who would turn them adrift upon the world, without where to lay their heads. When this result is reached by the law, it must be by no doubtful or strained construction.

We think the circuit court erred in refusing the instruction asked by the defendant. The evidence fully justified it. The judgment is reversed and the casue remanded with directions to the circuit court to enter judgment for the defendant.