MARY E. WEAVER v. THE FIRST NATIONAL BANK OF CHICAGO *et al.*

No. 15,046.   (94 Pac. 273.)

SYLLABUS BY THE COURT.

1. HOMESTEADS—*Exemption Applies to Surviving Husband or Wife.*   Although under the provision of the Kansas consti- tution that "a homestead . . . occupied as a residence by the family of the owner . . . shall be exempted from forced sale under any process of law" (Gen. Stat. 1901, § 235) a right to exemption cannot originate without the existence of a family—of a household consisting of more than one person, yet, when the homestead character has once attached, it may persist for the benefit of a single individual (either the husband or the wife) who is the sole surviving member of the family.   The case of *Ellinger v. Thomas,* 64 Kan. 180, 67 Pac. 529, overruled.

2. —— *Creditors of the Widow—Time of Incurring Indebt- edness.*   Where a wife after the death of her husband con- tinues to reside upon the family homestead, although she is its sole occupant, it is exempt against her own creditors as

well as against the creditors of her husband's estate, irrespective of the time the indebtedness was incurred, and without regard to which spouse held the legal title to the property during their married life.

Error from Jackson district court; MARSHALL GEPHART, judge. Opinion filed November 9, 1907. Reversed.

*John D. Myers,* for plaintiff in error.
*Charles Hayden,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: The First National Bank of Chicago obtained a personal judgment against Mary E. Weaver, upon an indebtedness which originated in 1905, and caused an execution to be levied upon real estate. She brought a suit to enjoin its sale, claiming that it was exempt, and being denied relief prosecutes error. The property was at one time the homestead of the plaintiff in error and her husband—he having the legal title to one of the lots of which it was composed, she that of the other. During their married life he executed and recorded a deed to her of the lot standing in his name. In his will, however, he treated both lots as belonging to him, devising a life-interest therein to his wife and the remainder to their children. He died in 1881. Mrs. Weaver elected to take under the will and continued to occupy the property with the children, all of whom finally became of age and moved away, leaving her in its sole occupancy, this being the situation when the judgment was rendered and the execution levied.

From this statement it is clear that Mrs. Weaver held the property free from any claim that might be made by a creditor of her husband. Such is the doctrine announced in *Cross v. Benson,* 68 Kan. 495, 75 Pac. 558, 64 L. R. A. 560, with which the court is entirely satisfied—a doctrine derived from the words of

the constitution itself, without the aid of any broadening statute. But whether it could be levied upon for the satisfaction of her own debt is a very different question. In volume 21 of the Cyclopedia of Law and Procedure, at page 578, it is said, principally upon the authority of *Keyes v. Cyrus,* 100 Cal. 322, 34 Pac. 722, 38 Am. St. Rep. 296:

"Where a homestead has vested in the surviving husband or wife it is not only exempt from the debts of the deceased spouse, but also from the debts of the survivor, whether the latter obligations were incurred prior or subsequent to the death."

The California statute construed in the case cited provided for the setting apart to the widow of a homestead out of the estate of her deceased husband, but did not in terms make it exempt from liability for her debts. The court, however, held, disapproving on this point *Estate of David Walley,* 11 Nev. 260, that a legislative purpose to create such exemption should be inferred, saying:

"The manifest object of the section is the support of the family, and to make provision for their support and maintenance. These demands of the family are deemed superior to those of heirs or creditors. . . . A homestead may be set apart to the widow, even though the estate be insolvent, and the property so set apart constitute the entire estate of the decedent; but if the homestead thus set apart to her could be immediately taken in execution by one of her creditors it would fail to be available for her use or support, and it might happen that her creditor would fare better than a creditor of the decedent whose money had perhaps been used to purchase the very property so set apart." (Page 326.)

The substance of this argument can be applied with plausibility to our own constitution, which reads: "A homestead . . . occupied as a residence by the family of the owner . . . shall be exempted from forced sale under any process of law." (Gen. Stat. 1901, § 235.) It surely requires no undue straining

of the rule that homestead laws are to be liberally construed to promote their beneficent purpose to say that the framers of this provision never intended that property withheld from the husband's creditors for the benefit of his widow might yet be seized upon to satisfy debts which she had made. Whenever circumstances exist, therefore, that enable the widow to invoke the aid of the law at all, it would seem that she should be protected even against process founded upon her own obligations. It must be confessed, however, that this proposition is in irreconcilable conflict with the principle declared in *Ellinger v. Thomas*, 64 Kan. 180, 67 Pac. 529. The precise matter there decided was, as expressed in the syllabus, that "a homestead claimant whose wife is dead, and whose children have grown to maturity and moved away and ceased their dependence on him and no longer constitute part of his family, no one else being associated with him in the family relation, cannot continue to retain the homestead exemption." The reasoning upon which this conclusion was based is exhibited by this excerpt from the opinion:

"The constitutional exemption is for the benefit of the family, and if there be no family there can be no exemption. The broader terms of the statute may sometimes extend the exemption to a single person, as was shown in *Shirack v. Shirack* [44 Kan. 653, 24 Pac. 1107], but the constitution limits the exemption right to families. The word 'family' denotes a collective and communal body, and not a single individual. No one can be his own family. There is no more reason for continuing the homestead exemption to a sole adult survivor of the family than there would be to confer it on him in the first instance. The latter, we know, has not been done, and before it can be said that the former has been done some warrant must be found in the law for saying it. We know that constitutions and statutes allowing exemptions are liberally construed in favor of exemption claimants, but, nevertheless, the spirit and intent of the exemption privilege must be found in the words of the exemption grant, looked at

in the light of its object, and not utterly beyond such words, or in opposition to them. The homestead interest is not an estate in land. It has been sometimes spoken of in loose and inaccurate speech as an estate, but only to characterize it as a right secured by law. It is an exemption of land under stated conditions. If the conditions do not exist, or having once existed are at an end, the exemption ceases. The views above expressed are in harmony with the rule which the text-writers have collected out of the various decisions. (Waples, Hom. & Exem. ch. 3, subtitle, 'Claiming after Loss of Family.')" (Page 185.)

As already stated, adherence to the view thus expressed must be fatal to the contention of the plaintiff in error. It cannot be said here, as it was in *Cross v. Benson,* 68 Kan. 495, 75 Pac. 558, 64 L. R. A. 560, that the widow was herself "the family of the owner" (syllabus), in the sense in which the expression was there used. The legal title appears to have been in her at the time of her husband's death. But aside from that consideration, where the property is sought to be taken to satisfy her debt, she must be deemed to be herself the owner. The question therefore is fairly presented here, as it was in *Ellinger v. Thomas,* 64 Kan. 180, 67 Pac. 529, whether the exemption which has once attached to property in consequence of its being occupied as a residence by the family of the owner continues for the benefit of one spouse after the death of the other and the dispersion of the rest of the household. The court is of course always reluctant to treat as still open a question which it has once definitely passed upon. But in matters involving the interpretation of the constitution it is usual and proper to give less force to the doctrine of *stare decisis* than in other cases. One reason for this is thus stated in volume 26 of the American and English Encyclopædia of Law, at page 162:

"A reason advanced to support this distinction between decisions construing statutes and those construing the constitution is that if the people are dissatisfied

with the construction of a statute the frequently recurring sessions of the legislature afford easy opportunity to repeal, alter, or modify the statute, while the constitution is organic, intended to be enduring until changed conditions of society demand more stringent or less restrictive regulations, and if a decision construes the constitution in a manner not acceptable to the people the opportunity of changing the organic law is remote."

Doubtless substantial justice may often be better promoted by adhering to an erroneous decision than by overthrowing a rule once established. But in so important a matter as the enforcement of the homestead rights guaranteed by the constitution the court feels an obligation to reëxamine a difficult and doubtful question in the aspect of any new light that may be offered. Moreover, *Ellinger v. Thomas* is of comparatively recent announcement. It has not been acted upon as a precedent in this court. And the strictness of its doctrine was so commented upon in *Cross v. Benson, supra,* as to suggest that it might require later modification, although it was then said that "no former decision need now be overturned." (Page 509.) These considerations are thought to justify further investigation of the question stated.

In the work cited in *Ellinger v. Thomas* (Waples, Hom. & Exem.) the author gives strong expression to the view that a homestead right can never survive for the benefit of a single member of the family, more, however, as his own judgment of what is sound law than as a deduction made from the decisions. It is true that he undertakes to distinguish some of the cases having a contrary tendency upon the ground that they turn upon special statutes, but others he condemns as being unsound in principle. That his own final conclusions are based upon a broad consideration of the policy and scope of homestead laws generally appears from these extracts therefrom:

"3d. The homestead immunity is not to protect

35—76 KAN.

single persons, but families. It is not to protect the head of a. family in his individual capacity but as a member of the household which he represents. It is secondarily for the family's stability—primarily for the good of the state. So, when the family is gone, the reason for allowing its late head to acquire this immunity is gone. . . . Take the family away, and what motive is left the state for interfering between debtor and creditor? If any, it certainly is not family conservation.

"4th. There is no more reason for assigning lost family as a ground for acquiring, than in assigning discontinued occupancy, forfeited title, or any formerly existing qualification of which the claimant might once have availed himself, but did not. The aged. widower, left alone in the world, needs to be sheltered—not more than the aged woman who has never had a family. Both may be proper objects of charity, but homestead laws are not charitable enactments—their beneficence being incidental. So, the argument that the ex-householder needs charity may be as plausibly applied to the impecunious spinster. Because he has had a wife and children, is his need necessarily greater than hers?" (Pages 99, 100.)

In section 70 of Thompson on Homesteads and Exemptions it is said:

"It is thus seen that the existence of a *family* is necessary to the *acquisition* of the homestead right in nearly all the states. Does a *continuation* of the right depend on a continuation of the family relation? When the association of persons which constitutes the family is broken up, whether by separation or the death of some of its members, does the right of homestead continue in the remaining householder, provided the other requisites of the statute concur? Most of the cases answer this question in the negative."

It is quite manifest that the last word is a clerical error and should be "affirmative," for the cases cited in the note supporting the statement are those which sustain the claim of exemption. In the recent case of *Palmer v. Sawyer,* 74 Neb. 108, 103 N. W. 1088, the state of the law as exhibited by the adjudicated cases is well presented in these words:

"Turning now to the decisions of the courts of last resort in other states on statutes of somewhat similar construction to our own, we find an irreconcilable conflict in the various conclusions reached. This conflict in some instances is traceable to the different provisions of the statutes construed, and in other instances to the conception taken by the court of the intention of the legislature in the enactment of the statute. Those courts which look upon the statute as a statute of nurture, intended solely for the protection of the dependent members of the family from the improvidence of the head of the family, without any division arrive at the conclusion that, when the homestead has been selected and the dependent members of the family for whose benefit it was created have ceased to occupy, the protection of the homestead ceases, because the reason for the protection has ceased. The leading cases supporting this theory of construction are: *Revalk v. Kraemer,* 8 Cal. 66, 68 Am. Dec. 304; *Santa Cruz Bank v. Cooper,* 56 Cal. 339; *Johnson v. Little,* 90 Ga. 781, 17 S. E. 294; *Cooper v. Cooper,* 24 Ohio St. 488; *Galligar v. Payne,* 34 La. Ann. 1057; *Hill v. Franklin,* 54 Miss. 632; *Fullerton v. Sherrill,* 114 Iowa, 511, 87 N. W. 419. In opposition to this view is another line of decisions based on the hypothesis that the intention of the legislature in enacting the various homestead statutes was to protect the home and *all* its inmates from any business misfortune and financial adversity that might befall them; that the protection extends to the head of the family as well as to the dependent members. This theory leads to the conclusion that, when a homestead has been selected by the head of a family, he becomes invested with a right or estate in such homestead, which cannot be defeated by the death or abandonment of the home by the other members of the family who occupied it at the time of its selection. The following are some of the leading cases supporting this view: *Silloway v. Brown,* 12 Allen (Mass.), 30; *Kimbrel v. Willis,* 97 Ill. 494; *Stanley v. Snyder,* 43 Ark. 429; *Beckmann v. Meyer,* 75 Mo. 333; *Webb v. Cowley,* 5 Lea (Tenn.), 722; *Blum v. Gaines,* 57 Tex. 119; *Stults v. Sale.* 92 Ky. 5, 17 S. W. 148, 13 L. R. A. 743, 36 Am. St. Rep. 575." (Page 113.)

While this classification shows nearly an equal division among the jurisdictions from which cases are

cited, such preponderance as there is favors the exemption. The Nebraska court, moreover, aligned itself with the majority. And the following decisions from other states may be added to the list: *Pardo v. Bittorf,* 48 Mich. 275, 12 N. W. 164; *Barney v. Leeds,* 51 N. H. 253; *Wilkinson v. Merrill and als.,* 87 Va. 513, 12 S. E. 1015, 11 L. R. A. 632, overruling *Calhoun v. Williams,* 32 Grat. (Va.) 18, 34 Am. Rep. 759; *Towne et al. v. Rumsey,* 5 Wyo. 11, 35 Pac. 1025. (See, also, *Moore v. Parker,* 13 S. C. 486, and *In re Feas's Estate,* 30 Wash. 51, 70 Pac. 270.) The cases of *Pierce v. Kusic,* 56 Vt. 418, and *Myers v. Ford and others,* 22 Wis. 139, are sometimes cited as authorities upon this side of the question, but they have no real bearing on the matter, for they are based upon statutes under which the existence of a family was not necessary to the inception of the homestead right.

On the other hand the following should be added to the leading cases supporting the minority view: *Herrin et al. v. Brown, Sheriff, et al.,* 44 Fla. 782, 33 South. 522, 103 Am. St. Rep. 182; *Jones v. McCrary,* 123 Ga. 282, 51 S. E. 349 (as being perhaps more closely in point than the Georgia case cited by the Nebraska court); *Betts et al. v. Mills,* 8 Okla. 351, 58 Pac. 957.

It would be impracticable within the space reasonably to be allotted to the consideration of a question of this character to attempt to review in detail the cases cited, or to discuss how far they are affected by differences in local statutes. It is true that there is much diversity in the legislation of the different states, but it is equally true that the same general policy runs through all of it. Such examination as it has been practicable to make leads to a belief that the difference in numerical strength between the two lines of authorities is really as great as it appears to be from the summary given. While some of those marshaled with the majority should perhaps be rejected from the computation for special reasons, several among the minor-

ity are equally inconclusive. The question of course is not one to be determined by a roll-call of the courts that have passed upon it; but with respect to a matter that is of equal importance and interest in every state of the Union having homestead exemption laws it is of especial interest to observe the rulings that have been made in different jurisdictions. The reasoning in support of what it is fair to call the majority doctrine is illustrated by these extracts from typical cases:

"Although a homestead estate cannot be acquired except by a householder having a family, yet when once acquired, and still occupied by him, it has been held not to be defeated or lost by the death or absence of his wife and children. *Doyle v. Coburn,* 6 Allen, 73. Any other construction would render a husband who had been deprived of his family by accident or disease, or by their desertion, without any fault of his, liable to be instantly turned out of his homestead by his creditors." (*Silloway v. Brown,* 94 Mass. 30, 34.)

"Upon all these considerations, we are inclined to the opinion that the tenant has not lost his right of homestead by the death of his wife and the dispersion of his children; that he is still entitled to the shelter of a home, exempt from the claims of creditors; that there is nothing in the act (to adopt the language of the tenant's counsel) which requires the harsh interpretation that he shall lose his homestead merely because of the death of his wife, which was the act of God, and which the tenant could not prevent.

"We may conceive the case of a poor debtor, entitled to, acquiring, and enjoying a homestead during all the years of a long and laborious life. His children have grown to man's estate and have all departed from the paternal roof, it may be to distant lands, where they have established their own homes and surrounded themselves with their own families; it may be that they have all died. At last the wife dies, and the father is left alone in the dwelling which he has always called his home, and which is endeared to him by fondest associations and by sacred memories. He is too old and feeble to acquire another. Shall he be turned out of the old homestead because of the inevitable fate which has deprived him of his wife?

"Or, we may take the case of the young man who by

habits of industry and frugality has acquired just enough property to purchase a shelter for himself and the young wife who is to share it with him. No child is born to them, and in a few weeks, or months it may be, the wife dies, and the young man is no longer, in strict construction, the head of the family. Shall he, too, therefore, be deprived of his homestead, and so, perhaps, of the opportunity of marrying again and adopting other members of his household?

"Such a construction is not required by the terms of the act. Such a construction would be strict, exclusive, harsh, unjust, illiberal, and subversive of the 'humane policy of the law.'" (*Barney v. Leeds*, 51 N. H. 253, 277.)

"The appeal raises this question: The existence of a family being necessary to the acquisition of a homestead, does a continuation of the right depend on a continuation of the family relation? The decided weight of authority is that a homestead estate, when once acquired and still occupied by the owner, is not defeated or lost by the death of his wife or the arrival of his children at years of maturity. . . . The reason assigned is not very satisfactory, or, at most, is one to be addressed to the political departments of the government. So that the decision seems to savor of what Jeremy Bentham calls judge-made law. Yet it has been generally followed. . . . The constitution, which contains our homestead statute, has not in express terms anticipated and provided for every possible phase of the question. It therefore devolves upon the courts to construe and apply the law to new cases as they arise. Interpreting the law according to its spirit and following the current adjudications, we hold, though with some hesitation, that when the association of persons, which constitute the family, is broken up, whether by separation or the death of some of the members, the right of homestead continues in the former head of the family, provided he still resides at his old home." (*Stanley et al. v. Snyder et al.*, 43 Ark. 429, 432, 433.)

"The householder or head of [a] family is himself a part of the household—a part of the family. The exemption is, however, not only for the benefit of the family, but for his benefit also. Having been set apart for his benefit, and also for the benefit of his family,

it would be an illiberal construction of this provision of the constitution to hold that, if he survived the other members of his family, this provision would no longer shield him against his creditors, but cease and determine, and at the end of a long life, it may be devoted to his family, that he should be uncovered and exposed to the creditors and the debts which had been accumulating during the years that he had been devoting his life and this property to the maintenance of his family. This humane provision, which this court has so often declared to be a shield, would be thus forged into a sword suspended for a time over his head by a thread as slender as the tenure of life of a little child. . . . If we are to construe this constitutional provision liberally, so that all the intents thereof may be fully and perfectly carried out, we must not disregard the benefits provided for the householder, and consider only the benefits provided for the other members of his family. It appears to us to be the just and proper construction of this provision to hold that, having once been established by law, it [the homestead exemption] continues at least as long as the householder shall continue to live and occupy the domicil provided for the benefit of himself and his family. To hold otherwise would be to hold that the constitutional provision for his benefit was of no effect, but exclusively for the benefit of the other members of his family." (*Wilkinson v. Merrill and als.*, 87 Va. 513, 518, 12 S. E. 1015, 11 L. R. A. 632.)

"There is something repugnant in the proposition that to the sorrow of losing his family should be added the misfortune that his home should be taken from him by forced sale; and that, too, for a debt for the payment of which it was not believed, either by himself or the creditor, at the time of its creation, that the homestead would be liable, and for the security of which it did not enter as an element of credit." (*Blum v. Gaines*, 57 Tex. 119, 123.)

"It seems to be settled, on general principles, that a homestead once acquired by the head of a family will not be defeated or lost by the death or absence of his wife and children, if he continues to occupy it. Any other construction would render a husband who has been deprived of his family by accident or disease, or by their desertion without any fault of his, liable to

be instantly turned out of his homestead by his creditors." (*Beckmann v. Meyer,* 75 Mo. 333, 335.).

"There is much force in the observation that the homestead act has respect to the family of the debtor, is for its benefit, to secure a home for the family, and that in any case where this family relation is not found to exist the homestead exemption does not subsist, there being no reason or cause for the application of the homestead law. This is very true as to the coming into existence of the homestead estate, and although the prime object of the statute be the securing of a home for the family, and for the benefit of the family as such, the second section of the statute shows that not to be the sole purpose throughout. That section provides that upon the death of the original owner of the homestead the homestead exemption shall continue after the death for the benefit of the husband or wife surviving, so long as he or she continues to occupy the homestead. It is not so long as he or she also remains a householder having a family, but simply so long as he or she continues to occupy the homestead, entirely irrespective of the condition of being a householder having a family. There may be no surviving child and no family, still the homestead exemption is continued to the surviving wife or husband, so long as she or he continues to occupy the homestead. If, then, the homestead exemption may continue in such surviving husband or wife so long as he or she continues to occupy the homestead, without the condition of being a householder having a family, why, in the case of the original owner of the homestead before his death, after the homestead estate has once become vested in him, should not the homestead exemption continue for him so long as he occupies the homestead premises, although he may have ceased to be a householder having a family? Why should not the statute in this respect regard him, the original owner, the meritorious cause of the homestead exemption, with equal favor as the survivor of such an one after his death? We are of opinion that it does, and that within the spirit of this second section, and the fair intent of the homestead act, taken together, the homestead exemption continued here after plaintiff had ceased to be a householder having a family; that after the homestead estate has once been acquired, under the statute, it continues in the original owner so long as

he occupies the homestead premises, although he may have ceased to be a householder having a family, and will only become extinguished in some one of the modes mentioned in the statute, of which ceasing to be a householder having a family is not one. This rendering of the statute would be in accord with the liberal interpretation which this court has always given to the homestead law." (*Kimbrel v. Willis,* 97 Ill. 494, 496.)

"Undoubtedly the having of a family was necessary to the creation of the right in him, but is it necessary to the continuance of it? While essential to its coming into existence, yet, when it has once vested in the debtor, does he lose it by death or the marriage of his children, leaving him alone, but still a housekeeper in the occupancy of the property? The statute makes no express mention in this respect. We must, therefore, look to its general scope and spirit for guidance, the right being the creature of it." (*Stults v. Sale,* 92 Ky. 5, 7, 17 S. W. 148.)

The statutes the construing of which gave rise to these expressions, however much they may otherwise differ from the homestead provision of the Kansas constitution, manifestly have this in common with it: they do not in terms declare that the homestead exemption shall survive the dissolution of the family. The same considerations that impelled the court in each of the cases cited to read such declaration into the law are operative here. The substance of the arguments by which such interpretation has been justified is applicable here. In spite of the assertion sometimes made that one whose wife and children have died stands in all respects in the same position as one who has never been the head of a family, the policy of the homestead law affords ground for a distinction, which may be given effect without doing violence to the language of the constitution. The right to the exemption cannot originate without the existence of a family— of a household consisting of more than one person. But when the homestead character has once attached and the head of the family remains in continuous oc-

cupancy of the property, doing nothing on his own part and suffering nothing within his control to be done that might affect his relation to it, in a sense it is still "occupied as a residence by the family of the owner," although death may have removed every other person interested in its exemption; it is occupied as a residence by a constituent part of the family, and by all of the family that survives.

It having already been determined in *Cross v. Benson,* 68 Kan. 495, 75 Pac. 558, 64 L. R. A. 560, that in virtue of the constitutional provision the widow, although living alone, may claim the homestead exemption against debts made by her husband, only by an unwarranted strictness of construction and nicety of discrimination could a like exemption be denied to the husband, or to the wife with respect to her own debts, whatever may have been the condition of the legal title during their married life—whether held by either or by both. The tendency to grant to one spouse the same privileges that are secured to the other, and to ignore distinctions based upon the condition of the legal title during their married life, is illustrated by this language from *Stults v. Sale,* 92 Ky. 5, 17 S. W. 148:

"It is urged with force that the homestead exemption is for the benefit of the family, and, therefore, where this family relation does not exist there is no homestead exemption. In other words, the reason for the rule ceasing, the rule ceases. This is true as to the coming into existence of the homestead right; and it is no doubt also true that the primary object of the statute was the protection of families from want, and the giving to them a shelter; yet the fact that the statute gives the homestead of the deceased wife to the husband during his occupancy of it, although he has no family, shows that it was not intended to provide for the wife and children alone. He, in such a case, does not become homeless. Can it well be supposed that the legislature intended that in the event of the death of the wife owning the homestead the benefit of it should continue to the husband during his

occupancy, although he has no family, and yet that if he be the owner of it, and his wife or children die, or the latter marry and leave him, his right to the exemption ceases? If so, it is a singular state of case; and if so, it is equally true of the wife, where she owns the homestead. In the event of the husband's death owning the homestead, she takes it as survivor so long as she occupies it, although she has no family; but if she owns it, and her husband dies, there being no longer any family, her homestead right ceases. Why should not the original owner have a right equal to the survivor, and why should not the law favor the latter equally at least with the former? Is the party to be worsted because he owns the property? Can any reason be given why the same right should not exist as to his own property as is given to him in his wife's property after her death? Ought not his claim to a homestead in his own property, as against his own creditors, to be as much regarded as his claim to one in her property after her death? The construction here contended for by the creditor should not be given to a statute which was enacted from a spirit of liberality toward the debtor." (Page 7.)

The same attitude is shown in *Eubank & Co. v. Landram*, 59 Tex. 247, where it was said:

"The constitution provides that the homestead 'shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead.' In other words, the constitution protects the surviving husband or wife in their right to the homestead, whether as against the heirs of the deceased or the creditors of the survivor, so long as such survivor occupies the homestead as such. And this exemption does not depend upon the title being in the survivor at the time of the death of the other marital partner. Whether the title to the property be vested in the community, or be the separate property of the deceased or the survivor, is immaterial; so long as the survivor continues to occupy the homestead as such it is neither subject to execution nor partition among the heirs of the deceased marital partner." (Page 248.)

This court is convinced that in *Ellinger v. Thomas*,

*supra,* too strict a rule of construction was adopted; that a more liberal interpretation, resulting in a different conclusion, would have been more in harmony with the constant effort shown in other jurisdictions and in other cases in this jurisdiction to ascertain and give effect to the spirit of homestead enactments in the light of the broad general purposes they are designed to accomplish; that it is better to disapprove the doctrine there announced than to strive to retain it as a portion of a system with other parts of which it is in essential conflict. That decision is therefore over-ruled.

It results that the judgment in the present case must be reversed.