Torrance *vs.* Boyd.

TORRANCE *vs.* BOYD.

1. A man who, in December, 1868, procured a constitutional homestead of realty and personalty, having at the time a wife, some minor children, and two adult daughters, all members of his family, the daughters being indigent and dependent, and his application not being restricted so as to exclude by its terms any portion of his family, is to be understood as having claimed and secured the homestead in behalf of them all. So long as the daughters, or either of them, continued indigent and dependent, and remained with him, having no other home, and deriving support from him, the home-

stead estate was not determined, though his wife died, and the minors became of age, married, and left him. In these circumstances, on marrying again in 1878, he was not entitled to another homestead.

2. Claiming homestead and causing it to be allowed by the ordinary, is in the nature of a recovery by the applicant for the benefit of his family, and after the fruits of the proceeding have been enjoyed for nine or ten years, the allowance will not be held void, at the instance of him or his privies, because the application did not disclose expressly that he was the head of a family, or that he was a resident of the county in which the proceeding took place.

3. The full and fair disclosure and surrender of personalty, required by section 2005 of the Code, must be made at the time of the application, or at or before the order setting off the property exempt is granted. Any failure (until satisfactorily explained and accounted for, and the consequences repaired) is to be deemed intentional and therefore fraudulent.

4. In charging the law, whether common or statutory, so much only as applies to the facts in evidence, should be stated to the jury. Thus, where the evidence as to concealment related to property other than money, and there was no testimony referring to money, though the statute embraced both, the charge should have been confined to the former. But as the verdict was correct, the error was harmless.

Homestead. Charge of Court. New trial. Before Judge Buchanan. Campbell Superior Court. August Term, 1878.

Two executions in favor of Boyd against Torrance, were levied upon a mare and horse as the property of the defendant, and a claim filed by his wife, Mrs. Torrance. The evidence upon the issue thus formed presented the facts set forth in the opinion.

The jury found the property subject. The claimant moved for a new trial upon the following grounds:

1. Because the court erred in admitting in evidence the first homestead proceedings of the defendant.

2. Because the court erred in charging the jury, that if they believed, from the evidence, that defendant had a homestead set apart to him in 1868, as the head of a family consisting of a wife and minor children, and that one mem-

Torrance *vs.* Boyd.

ber of that family, a female over twenty-one years of age, in indigent circumstances, was living with him, depending on him for a support, when the second homestead was set apart, the defendant, although he had married another wife, was not entitled to a second homestead. That it did not make any difference whether that female was of age when the first homestead was set apart or not.

3. Because the court erred in charging, that if the jury believed the defendant had in his possession, at the time he made his last application for a homestead, or at the time he obtained the order of court setting off the property as exempt, any money or other personal property that he fraudulently concealed or did not deliver up for the benefit of his creditors, then all orders of court obtained by the fraudulent concealment of said property, or obtained, if defendant had personal property which he kept out of reach of the levying officer, or did not, in good faith, deliver up for the benefit of his creditors, are null and void, and they should find the property subject.

The motion was overruled and claimant excepted.

LAVENDER R. RAY, for plaintiff in error, cited Code, §§2002, 2003, 2005, 2006; 13 *Ga.*, 1; 59 *Ib.*, 239, 331; 56 *Ib.*, 370, 520; 40 *Ib.*, 143; 46 *Ib.*, 231; 41 *Ib.*, 153, 196; 57 *Ib.*, 348.

T. W. LATHAM, for defendant, cited 59 *Ga.*, 235, 355; 60 *Ib.*, 653; 41 *Ib.*, 153; 45 *Ib.*, 319; Code, §§2005, 2033–2036.

BLECKLEY, Justice.

In December, 1868, Torrance went through the form of taking a homestead of realty and an exemption of personalty, before the ordinary of Campbell county, the realty valued at $1,500.00, and the personalty at $1,000.00. The ordinary approved the plat and schedule in due form, thereby

Torrance *vs.* Boyd.

granting the application. The papers showed on their face that the claim of homestead and exemption was made under the constitution of 1868, but there was no allegation that the applicant resided in the county, or that he was the head of a family, or that he had any family. In point of fact, he had a wife, three minor children, and two daughters of full age. The daughters were indigent and dependent upon him, and they resided with him as members of his family. The minors became of age in and prior to 1873. The wife died in 1874. He married another in 1876, and she died in 1877. He married another in April, 1878. During the following month (most of the property secured as above having been sold or consumed) he went through the form of taking a second homestead of realty and exemption of personalty, before the ordinary of the same county. The proceedings on this occasion were regular in all respects. The application referred to the act of 1868, and to the constitution of 1877, and described the applicant's family as consisting of himself and wife. His two adult daughters had, however, never ceased to reside with him as members of his family, and their indigence and dependence upon him still continued. The other children had married, and left him. The ordinary, after the requisite preliminaries, granted the application. The plat of the realty embraced some of the land included in the previous homestead, besides some which was not included. The two schedules of personalty showed little if any correspondence as to the specific articles of property. The value of the realty was $840.00, and of the personalty $781.00, besides about $900.00 in old claims not considered solvent. For some reason not explained in the evidence, there was a failure to disclose or deliver up one gin, one thresher, and one fan, worth altogether $17.50. Among the items of personalty in the second schedule were a horse valued at $45.00, and a mare valued at $50.00, both acquired by purchase in the spring of 1878. These animals were under levy at the time they were set apart as exempt,

having been seized in March, 1878, by virtue of two executions against Torrance in favor of Boyd, issued in 1877, upon judgments rendered in 1871. In June, 1878, after the second homestead and exemption were granted, Mrs. Torrance, the third wife of Torrance, interposed a claim founded on this homestead and exemption right. The jury found the property subject. The claimant moved for a new trial. The grounds of the motion were, that the court erred in admitting in evidence the first homestead and exemption papers, and in charging the jury upon their effect, in view of the composition of the debtor's family, and also upon the effect of failure to disclose and deliver up the gin, thresher, and fan. The language of the charge complained of is set forth in the reporter's statement.

1. On the actual facts now in evidence, if those of them which are material had appeared in the application, there can be no doubt that Torrance was entitled to the first homestead and exemption for the benefit of his whole family, including his adult indigent daughters. See 41 *Ga.*, 153. The application, it is true, was very meagre. It ought to have shown that the applicant resided in the county, that he was the head of a family, and of what class or classes of children with respect to age his family in part consisted. Possibly it might not be capable of withstanding an attack by creditors for these omissions, or some of them. We need not deal with this question, for no creditor, so far as appears, has ever attacked it. The only attack we know of is the present one, and it is made virtually by Torrance himself; for it is by his wife, who founds her right upon the second homestead and exemption proceedings, and these, as well as the former proceedings, were had by him. It was he who repudiated the former by instituting the latter; and she, by standing upon the results of the latter, is but continuing and carrying out the repudiation which he inaugurated. It appeared on the face of the first proceedings that they rested on the constitution of 1868; and there

Torrance *vs.* Boyd.

was no restriction in the application in respect to benefi-
ciaries—no indication that some members of the family were
in contemplation and others not. This being so, and the
application, as we hold, being (as against the applicant and
his present wife) to be deemed sufficient, the adult indi-
gent daughters are to be treated as a part of the beneficiaries.
This would keep the first homestead and exemption on foot
so long as the daughters, or either of them, continued indi-
gent and dependent, and remained with their father, de-
riving their support from him and having no other home.
Pending that period, the family as constituted when the
homestead and exemption were secured, would not be dis-
solved. Changes in its members might occur by death, birth,
or marriage; but a wife coming in would simply take the
place of the wife who went out, and no new family would
be founded. The charge of the court upon this part of the
case was correct. Of course, if the first grant of home-
stead and exemption was valid, and if it had not expired
when the second took place, the latter was of no force.
The value of the property considered, there can be no pre-
tence that the debtor was entitled to both allowances at
once.

2. The failure of the first application to set forth that the
applicant was a resident of the county, or the head of a
family of any kind, is certainly a defect which ought not to
be passed over with the summary notice of it which has
been taken in the foregoing head of this opinion. It seems
at first view rather a grave matter, and gave us some trouble
in ruling the entire case. In residence, the question of
jurisdiction is involved; and to the heads of families the
homestead and exemption right of the constitution is con-
fined, unless the application is by or on behalf of the guar-
dian or trustee of minor children. That the jurisdiction
ought to appear on the face of the papers, and that the
main fact on which the right itself is grounded, ought also
to appear, there can be no doubt; but the question is, can
one who has procured a judgment to be rendered in his

own favor, and who has had the fruits of it for nine or ten years, afterwards urge defects in the declaration as rendering the judgment void? Defects, too, which at the proper time were amendable, if a motion to amend had been made. Suppose a creditor has brought suit, obtained judgment, and been in the undisturbed enjoyment of its fruits for years, can he sue again for the same debt, and avoid the plea of a former recovery on the ground that his pleadings in the first action did not disclose that the court had jurisdiction of the person, or set forth distinctly that the plaintiff was a creditor, though his whole proceeding, and the judgment which the court rendered, implied it? It might be that the first action was upon a note payable to some other person or order, and that the declaration omitted to set forth any indorsement, and this omission the second declaration might supply, yet, if the note itself was in fact the same, would the second action be maintainable? Now, between homestead proceedings and ordinary suits there is not an exact similarity, but there is some degree of analogy. A homestead proceeding, when in fact effective, and when within the scope of the constitution and laws, on the actual facts, however these facts may be made to appear, is in the nature of a recovery by the applicant for the benefit of his family. Having recovered, and possession thus secured having continued for a longer time than is requisite to mature a prescriptive title under the general limitation laws of the state, will he be allowed then to ignore the recovery, treat it as a nullity, and claim a new allowance, chiefly out of other property? Rather is he not estopped, and is not his wife, because in privity with him, estopped also? It seems to us that the answer must be in the affirmative, and we hold accordingly. To pursue the analogy with a common suit to its full extent, would require that the first homestead should have been set up and urged before the ordinary as a bar to the second, when the application for the latter was passed upon; but on this point we think the analogy is not to be followed. In the nature of things, the ordinary did not have jurisdiction

to entertain both applications, the original family of the applicant being, as we have ruled, undissolved. A necessary consequence, therefore, of holding that it is too late to question the jurisdiction as to the first application, is to deny jurisdiction as to the second. And if the ordinary had no jurisdiction in the latter case, that objection would be available to creditors at any time and in any court. Creditors are not obliged to heed an application which the ordinary has no power under the law to entertain; and the ordinary certainly has no power to entertain a second original and independent application after a first has been duly granted. According to the actual facts, were they open to controversy, the jurisdiction and the merits were both complete on the first application. It is not pretended, so far as we can gather from the evidence, that the applicant was not a resident of the county of Campbell, or that he was not the head of a family, when that application was made and granted. That the estoppel of which we are speaking might be applied to shut out evidence, if any were offered now by the applicant or his wife, to impugn either the jurisdiction or the merits, is not improbable; but in this case we do not so apply it. No such evidence was offered. We silence complaint of the omission to allege affirmatively in the application the jurisdictional fact of residence, and the meritorious fact of headship to a family, and this is all the use we make of the estoppel. This use simply treats the application as if its defects were supplied by amendment; and so treating it, the want of jurisdiction over the second application follows as an inevitable corollary.

3. If the validity of the second proceeding depended alone on its purity, there would still be difficulty in upholding it under the evidence. Certain articles of personalty, of some though not of very considerable value, were held back by the applicant, and neither disclosed nor surrendered. In section 2005, the Code declares that if money or other personal property "is fraudulently concealed, or is not delivered up for the benefit of his creditors, no exemp-

tion shall be made in his favor till it is so delivered up;
and all orders of court heretofore or hereafter obtained by
the fraudulent concealment of property as aforesaid, or
obtained while the debtor had personal property, money,
stocks or bonds which he kept out of the reach of the levy-
ing officer, or did not in good faith deliver up for the bene-
fit of his creditors, shall be null and void, and of no effect,
and the property set off to the debtor by such order or
judgment shall be subject to levy and sale," etc.   Further
on in the section, there is a purpose declared to confine this
consequence in favor of liabilities of the debtor exist-
ing at the time his fraud was attempted, and not let
it operate in behalf of creditors, becoming such after
the homestead and exemption are set apart.    On the
trial of the present case Torrance was a witness.    The
whole of his testimony concerning the gin, thresher and
fan was that they were embraced in the first schedule, that
he has them yet, at home and in his possession, and that the
first is worth ten dollars, the second five dollars, and the
third two dollars and fifty cents.   He offers no explanation
through his own testimony or any other, why they were
omitted from the second schedule, why he did not disclose
or surrender them, or why he does not now surrender them.
The scheme of the statute, as we understand it, is that a
party shall make a full showing of all his personal effects,
and that all of them must either be in his schedule or de-
livered up.   He cannot, without the imputation of fraud,
retain them, holding them away from his creditors and
keeping them out of his schedule, merely because he might
have put them in the latter and thus secured them if he
would.   They are subject to his debts so long as he keeps
them out of the schedule, and whatever is subject must be
surrendered.   There must be a disposition of all his per-
sonalty, and the whole must go to his family, or a part to
the family and the residue to his creditors if he has cred-
itors at the time.   It is not a division between himself and
his family, but between his family and his creditors which

he is to make if there are existing creditors unsatisfied. Fraud, it is true, is not to be presumed, but must be proved; but we hold that it is proved, *prima facie*, when the act which the law forbids is proved, and there is no explanation of the purpose or intention. A man is to be understood as intending what he does, and what by way of usual or probable consequence, follows immediately from his act, until something appears to rebut or explain the intention. It may be that no attempt to explain was made because of an apprehension that to stir this little matter would expose something larger to detection. At all events, no mind at all on the alert can fail remarking that there is total silence where the circumstances apparently called for something to be said, if anything favorable could be said. The court's charge on this branch of the case was in accordance with the statute.

4. And, with the exception of the word money, the charge, in its precise language, was pertinent to the facts in evidence. Though that word is in the statute, it should have been omitted from the charge; for instructions to the jury should take in no more of law, common or statutory, than the jury may possibly be able to apply to the case. As there was no evidence as to withholding or concealing money, it was an oversight to mention money; but this trivial error did no harm. It was a mere pebble on the track, and did not and could not throw off the train. The verdict was correct.

Judgment affirmed.