NEAL *et al.*, executors, *v.* BROCKHAN *et al.*, and *vice versa.*

1. Where a mother applied for and was granted a homestead for herself and three minor children, her application saying nothing as to one of them being an imbecile and dependent, that he subsequently but before arrival at age became so did not keep the homestead estate alive after the death of the mother and after all three of the children became of age; but the property was subject to levy and sale under judgment against the mother. (R.)

2. An entry on the execution issued from a justice's court, made by a constable residing and acting in a different district in the same county, was legal. And if this were a *bona fide* effort of the plaintiff to keep alive his judgment, dormancy of the same would be thereby prevented, although the execution had not been directed to all the constables of the county, and although the defendant did not reside or have property in that district. (R.)

3. The rate of interest specified in notes given on the 15th of January, 1876, and due within less than six months, being one per cent. per month, such rate was equal to twelve per cent. per annum, which was then lawful; and the same ran after maturity as well as before. That the month of February had only twenty-eight days did not render the rate usurious. (R.)

April 20, 1891.

Homestead. Levy and sale. Judgments. Executions. Constables. Interest and usury. Before Hon. JOHN L. HOPKINS, Judge *pro hac vice*. Fulton superior court. September term, 1890.

Reported in the decision.

T. P. WESTMORELAND, for plaintiffs.

ARNOLD & ARNOLD, for defendants.

SIMMONS, Justice.

The record discloses that Mrs. Brockhan borrowed of Neal certain money for which she gave him her six promissory notes dated January 15th, 1876, all due within less than six months, and agreed to pay interest at the rate of one per cent. per month. The notes were sued to judgment in a justice's court on the 8th of July, 1876. Judgment was rendered for the interest on the notes at one per cent. per month, and for the same rate

of future interest on the judgments themselves.  Mrs.
Brockhan applied for a homestead, and it was granted
on the 12th of January, 1879.  She made the applica-
tion as the head of a family consisting of herself and
her three minor children.  The minor children were
Annie B., Willie and John.  Willie, the youngest, at-
tained his majority in 1881.  His mother, to whom the
homestead was granted, died in 1883.   After the
mother's death and after all the children had arrived at
their majority, Neal levied his *fi. fa.* upon the property
set apart as a homestead.   Annie B. filed an affidavit of
illegality for herself and her infirm brother Willie and
her brother John, and alleged that the property levied on
was not subject to levy and sale, because in July, 1879,
her mother had the property set apart to herself and
her three minor children as a homestead, and that the
homestead was still in existence, with the affiant and
her brother Willie as beneficiaries ; that Willie attained
his majority in March, 1889, and "is now and was long
before said date an infirm person and wholly dependent,
incapacitated in mind and body for any of the ordinary
transactions of life, without power of speech and other-
wise totally helpless; and he is therefore still one of
the beneficiaries.  His infirmity began before the death
of his mother and before he attained majority, and she
is compelled to care for, support and maintain him.
Affiant makes the affidavit because her mother, one of
the defendants in the judgment, died intestate, and the
lands levied upon descended to John, Willie and affiant
as her children and only heirs at law."  The affiant
also states that she is the legally appointed guardian of
Willie, who is an imbecile.   Under this state of facts
the trial judge decided that the land was not subject,
and Neal excepted.

We think the court erred in this ruling.  It will be
remembered that the mother applied for and was granted

a homestead for herself and her three minor children. Nothing was said in the application as to Willie's being an imbecile and dependent; the allegation was that he and the other two were minors, and it was upon this ground that the homestead was granted. When, therefore, the mother died and the children became of age, according to the repeated rulings of this court the homestead estate ceased and the land became subject to the liens of creditors. We do not think the fact that one of the minors became imbecile and dependent after the homestead was set apart but before he became of age, would change this rule and keep the homestead estate alive. When the head of the family, to whom the homestead was set apart, died, the land descended to her children as her heirs at law; and after they became of age the homestead ceased, and if there had been no creditors, the children would have had the right to have the property sold or divided. There being a judgment creditor in this case, his lien, which had been inactive and held off since the homestead was set apart, became active and was leviable when the homestead estate ceased.

The defendant in the court below insisted upon two other grounds of illegality, which the court overruled, and she filed a cross-bill of exceptions. The first ground taken in the cross-bill was that the judgments were dormant, because the only entry made by any officer or other person upon the *fi. fas.* within the period of seven years from June 5th, 1878, was an entry made by a constable who was not an officer of the militia district wherein the *fi. fa.* was issued and in which the defendant resided, but was an officer and constable of another district, and at the time he made this entry on the *fi. fas.* there were two duly qualified and acting constables in the district whence the *fi. fa.* issued, and the constable who made the entry not being an officer authorized to

execute and return the *fi. fas.*, they were dormant. There was no error in overruling this ground of illegality. We think the entry made by the officer residing and acting in a different district from the one whence the *fi. fas.* issued, was a legal entry. Executions issued from a justice's court are directed to any lawful constable of the county. Therefore any lawful constable of the county would have a legal right to make an entry thereon. Moreover, if it was a *bona fide* effort on the part of the plaintiff to keep his judgment alive, by having the entry made by the constable in another district, it would prevent dormancy of the judgment, although the execution had not been directed to all the constables of the county, and although the defendant did not reside in that district and had no property therein. *Long* v. *Wight*, 82 *Ga.* 431, and cases there cited.

The next ground taken in the cross-bill of exceptions is that the notes were each given on the 15th of January, 1876, were for less than six months, and drew interest at the rate of one per cent. per month, and that the judgments were rendered July 8th, 1876, for interest on the notes from January 15th, 1876, at one per cent. per month, and drew interest at one per cent. per month, from their date; and it is contended that "in the absence of a contract to draw legal interest, the judgments only draw interest at seven per cent. per annum, as provided by the act of 1875;" and that the claim for excess over lawful interest should therefore be disallowed. The trial judge did not err in overruling this ground. At the time these notes were given, the law allowed 12 per cent. per annum, if specified in writing. These notes specified one per cent. per month, which is equivalent to twelve per cent. per annum. It was claimed, however, in the argument, that after judgment on the notes, interest should have been computed

at seven per cent. only, instead of twelve, as was done. Under our code and under the decisions of this court, judgments bear interest at the contract rate and not at the rates which all contracts carry if no interest be stipulated therein. *Daniel* v. *Gibson*, 72 *Ga.* 367.

It was claimed by counsel that when the per cent. is split up and made payable for a short period, it must bear the same proportion to the time it runs as twelve does to twelve months, and that as February had only twenty-eight days, the rate of interest was more than twelve per cent. per annum. We have stated this point and the substance of the argument upon it, not that we think there is anything in it, but to show to what fine-spun theories learned and able counsel will resort when hard pressed in their cases. It is sufficient to say that to all practical intents and purposes one per cent. per month is equivalent to twelve per cent. per annum, and that charging interest at the rate of one per cent. per month is not usury, although some of the months may have a less number of days than others. *De minimis non curat lex.*

*Judgment reversed as to the main bill of exceptions, and affirmed as to the cross-bill.*