### JONES *et al. v.* McCRARY *et al.*

1. The writ of error will not be dismissed on the ground that it appears from the brief of evidence incorporated in the bill of exceptions that certain of the defendants in error are persons non compos mentis and were not represented by guardian ad litem or next friend, when it does not appear that the persons in question have ever been adjudged lunatics, and when they have appeared in the court below as defendants and secured the benefit of the ruling which it is sought to have this court review.

2. It will be presumed that an officer has not exceeded his authority, unless some showing to the contrary is made ; and where the sheriff's return shows that he has personally served one of the defendants in error with a copy of the bill of exceptions, the writ of error will not be dismissed on the ground that the return does not show that the person in question resides in the county over which the sheriff's jurisdiction extends, there being nothing in the record to indicate that she resides elsewhere.

3. The assignments of error, while not scientifically drawn, are sufficient to withstand a motion to dismiss.

4. An applicant took a homestead in 1869 as the "head of a family," consisting of himself and eleven children—four sons and seven daughters. The applicant died in 1885, after all of the children had reached majority. Four of the daughters were living on the place with him at the time of his death, and have continued to live on it and support themselves out of its proceeds. *Held*, that the only claim of the four daughters as beneficiaries of the homestead was as dependent relatives of the applicant; and when he died, their dependence ceased and the homestead estate was at an end.

Argued April 13, — Decided June 15, 1905.

Application for partition. Before Judge Holden. Warren superior court. October 6, 1904.

*L. D. McGregor* and *R. H. Lewis,* for plaintiffs.

*E. P. Davis,* for defendants.

CANDLER, J.    1. On the call of this case in this court the defendants in error moved to dismiss the writ of error, on the grounds, (1, 2) that there was no proper assignment of error; (3) that it appears from the brief of evidence contained in the bill of exceptions that two of the defendants in error are persons non compos mentis, and are not represented by guardian or next friend, and were not properly served with a copy of the bill of exceptions; (4) that it does not appear from the entry of service that certain of the defendants in error were served with the judge's certificate or the writ of error; and (5) that it nowhere appears that one of the defendants in error resides in Warren county, where the suit was pending, or that the sheriff had authority to serve her officially.    The assignments of error, it must be confessed, are subject to criticism, but after a careful examination of the entire bill of exceptions we think they are sufficient to withstand a motion to dismiss.    It is true that it appears in the evidence that certain of the defendants in error are imbeciles; but it does not appear that they have ever been adjudged lunatics.    Having appeared in the court below without the appointment of a guardian, and received the benefit of a judgment in their favor, they can not now set up their disability in order to prevent the plaintiffs in error from calling in question the correctness of that judgment.    As to the service of the bill of exceptions, counsel for three of the defendants in error acknowledged service, while the sheriff's entry shows personal service on the remaining three.    There is nothing on the face of the return to indicate that the service was defective in any way.    In the absence of some showing to the contrary it will be presumed that the sheriff did not exceed his authority by serving a party over whom he had no jurisdiction.    The motion to dismiss the writ of error is therefore overruled.

2. In 1869 Ezra McCrary, as the "head of a family," took a homestead in certain real and personal property, the realty consisting of 285 acres of land in Warren county.  The record is silent as to whether he had a wife living at the time or not. There were eleven children — four sons and seven daughters, — most, if not all, of whom were of age when the homestead

was set apart. Two of the daughters were and still are imbeciles. They, with two other unmarried daughters of Ezra Mc-Crary, live on the land embraced in the homestead, and are dependent upon it for a support. Ezra McCrary died in 1885, intestate, the plaintiffs and the defendants in the present case being his only heirs at law. This suit was a petition by some of the heirs at law to partition the real estate. At the conclusion of the evidence, the material portions of which have been substantially set out in the foregoing, the judge of the superior court directed a verdict for the defendants, " on the ground that the homestead estate has not yet terminated," and the plaintiffs excepted.

The question presented is not without considerable difficulty, for the reason that the decisions of this court construing the homestead law enacted in pursuance of the constitution of 1868 have been far from harmonious. That act did not provide, as does the present law, in express terms for an exemption for the benefit of dependent females. Its provisions extended only to " each head of a family, or guardian or trustee of a family of minor children." Code of 1873, § 2002. But in construing the meaning of the term " head of a family," this court in an early case decided that the word " family " was not to be confined to the wife and immediate descendants of the applicant, but included indigent female relatives who lived with the applicant and were dependent upon him for a support. See *Marsh* v. *Lazenby*, 41 *Ga.* 153, where it was held that an unmarried man, whose indigent mother and sisters live with him and are supported by him, is the head of a family in the sense in which the term is used by the constitution of 1868. Grandchildren have also been held to be members of the applicant's family within the meaning of the homestead laws. *Hall* v. *Matthews*, 68 *Ga.* 490; *Towns* v. *Mathews*, 91 *Ga.* 546. In direct conflict with these cases is the ruling in the case of *Dendy* v. *Gamble*, 64 *Ga.* 528, where it was held that to constitute one the head of a family within the meaning of the homestead clause of the constitution of 1868, there must be some legal obligation on him to support its members; but of course this case can not prevail as authority in the face of the earlier case of *Marsh* v. *Lazenby*, supra. Indeed, our court seems to have drawn a distinction, the

logic of which is not apparent to the writer, between different sorts of family to which the benefits of a homestead were allowed. Thus, as will have been seen, in *Marsh* v. *Lazenby*, a family consisting of the applicant's mother and indigent sisters was recognized. In *Heard* v. *Downer*, 47 *Ga.* 629, there is a strong, if not a necessary inference that adult children, though dependent upon the applicant, are not entitled to the benefits of a homestead; while in *Vornberg* v. *Owens*, 88 *Ga.* 237, it was held: "That one of the minor beneficiaries of a homestead taken by the head of a family in 1879 is, after arrival at full age, a dependent female, will not extend the duration of the homestead beyond the death of the head of the family and his widow, and beyond the arrival at majority of all the children." Citing *Neal* v. *Brockhan*, 87 *Ga.* 130. And see *Sutton* v. *Rosser*, 109 *Ga.* 207 (4). On the other hand, in *Torrance* v. *Boyd*, 63 *Ga.* 22, it was held that where a man procured a homestead under the constitution of 1868 as the head of a family, without stating the nature of his family or restricting his application to any particular members of it, indigent and dependent adult daughters were entitled to its benefits, and that the homestead estate did not expire upon the death of the wife and the arrival of the minors at majority. In this case, however, the head of the family was in life at the time the suit was brought. To reconcile these cases is by no means an easy task. It can only be done on the hypothesis that although the constitution provided merely for a homestead for the benefit of the "head of a family," a homestead could be procured for the benefit of a head of a family of minor children which would endure only while the children were minors, regardless of their dependence; and that another sort of homestead could be procured for the benefit of the head of a family of dependent female relatives, which did not terminate with the arrival at majority of minor children or grandchildren, but lasted during dependence. Giving to the homestead in the present case the most liberal interpretation, viz., that it was procured for the benefit of a family of dependent females, what is the limit of the homestead estate? Homesteads for the benefit of families of minors have uniformly been held to terminate with the arrival at majority of the beneficiaries; and by parity of reasoning, a homestead for the benefit of a family of dependent females must terminate when de-

pendence terminates.   But dependence upon what — the property, or the applicant for the homestead? We confess that it seems more logical and consistent with former rulings of this court to hold that the dependence should be upon the property rather than the applicant.   But the question has been positively answered in the case of *Towns* v. *Mathews,* 91 *Ga.* 549 (4), where it was said:   "The general fact of dependency alone would not be sufficient to keep the homestead in existence, because it has to be a dependency upon some person in life entitled, because of such dependency, to take a homestead." Tested by this rule, then, the homestead in the present case expired with the death of Ezra McCrary in 1885, and the court below erred in holding that it was still in existence.

We were asked by counsel for the defendants in error to review the case of *Haynes* v. *Schaefer,* 96 *Ga.* 743, with a view to overruling that decision in case it should be found to conflict with the view of the law taken by counsel in his brief.   That case rests squarely upon the decision in *Towns* v. *Mathews,* supra, which we were not asked to review.   In *Towns* v. *Mathews,* the beneficiaries of the homestead were the wife and the minor granddaughter of the applicant.   The granddaughter's claim upon the applicant did not grow out of the fact of her minority, as would have been the case with one of his children ; for a man is under no legal obligation to support his grandchildren, though they be minors; but upon the fact that she was a dependent female relative who lived with him and was a part of his household.   In *Haynes* v. *Schaefer,* the family consisted of the wife of the applicant and several children.   Two daughters, one of whom was a minor at the time the homestead was set apart, and the other not, claimed the benefit of the homestead after the death of the applicant and after the youngest had come of age.   Their claim was likewise that of dependence rather than minority, and consequently the case came within the rule of *Towns* v. *Mathews.*   As no request was made to overrule the latter case, it will not be disturbed, and *Haynes* v. *Schaefer,* in view of the earlier ruling, could not have been decided otherwise than it was.

*Judgment reversed.     All the Justices concur except Simmons, C. J., absent.*