BELL, executor, *v.* CARTER.

1. A homestead set apart in 1885, under the constitution of 1877, to a mother as head of a family, for the benefit of herself and her dependent daughter then 42 years of age, ceases to be a homestead on the death of the mother.

(a) In such a case, the dependency is upon the mother and not upon the property so set apart, and upon the death of the mother the dependent female has no further right in the homestead property as such.

(b) In 1884 a fi. fa. was issued in favor of B. against C. In 1885 the mother of C. had set apart to her and her dependent daughter, under the constitution of 1877, a homestead in lands belonging to the mother. The latter died in 1909, intestate, leaving six children and the homestead lands. The one-sixth undivided interest of C. in the homestead lands was levied on under the fi. fa., and a claim was interposed by the dependent daughter under the homestead. On the trial of the case the court directed a verdict for the claimant. *Held:* (a) that the direction of the verdict for claimant was error. (b) That C. inherited an undivided one-sixth interest in the estate of his mother as heir at law, and that the interest of C. levied on was subject to the fi. fa. as against the claim sought to be set up under the homestead.

2. The court erred in directing the jury to find a verdict for the claimant.

AUGUST 15, 1912.

Claim. Before Judge J. B. Park. Morgan superior court. September 7, 1911.

*Williford & Lambert,* for plaintiff in error.

*E. W. Butler,* contra.

HILL, J.    In 1884 A. A. Bell obtained a fi. fa. against James
T. Carter.    Mrs. Mary A. Carter, the mother of the defendant in
fi. fa., died intestate in 1909, leaving six children, all of age and
under no legal disability, among them the defendant in fi. fa.    At
the time of her death Mrs. Carter owned the title to 152 acres of
land, in which she had taken a homestead in 1885 for the benefit
of herself and her dependent and infirm daughter, Miss Laura E.
Carter, then about 42 years old.    After the death of Mrs. Carter in
1909, there being no administration on her estate, the executor of
Bell, the plaintiff in fi. fa., caused the execution to be levied upon
an undivided one-sixth interest in the homestead lands as the
property of the defendant in fi. fa., James T. Carter.    Miss Laura
E. Carter filed her claim "solely by reason of and because of said
homestead set apart in 1885."    The court below held that the
homestead still remained in force after the death of Mrs. Carter,
for the benefit of the claimant; and directed a verdict accordingly.
To this judgment the plaintiff in fi. fa. excepted, and brought the
cause to this court for review.

The sole question is whether the homestead set apart to Mrs.
Carter and her dependent daughter terminated on the death of
Mrs. Carter.    We think the homestead did terminate at her death.
In the case of *Towns* v. *Mathews,* 91 *Ga.* 546 (17 S. E. 955), it
was held: "A homestead set apart in 1873, by the head of a fam-
ily for the benefit of his wife and a minor granddaughter, termi-
nated on arrival at majority of the granddaughter, the family
having been previously dissolved by the death of both the other
members.    The condition of the granddaughter as a dependent
female would not extend the duration of the homestead, the person
on whom she was dependent being no longer in life."    And see
*Haynes* v. *Schaefer,* 96 *Ga.* 743 (22 S. E. 327).    In the case of
*Jones* v. *McCrary,* 123 *Ga.* 282 (51 S. E. 349), this court held:
"An applicant took a homestead in 1869 as the 'head of a family,'
consisting of himself and eleven children—four sons and seven
daughters.    The applicant died in 1885, after all of the children
had reached majority.    Four of the daughters were living on the
place with him at the time of his death, and have continued to live
on it and support themselves out of its proceeds.    *Held,* that the
only claim of the four daughters as beneficiaries of the home-
stead was as dependent relatives of the applicant; and when he

died, their dependence ceased and the homestead estate was at an end." And on page 285, Mr. Justice Candler, in discussing the question now before the court, said: "Homesteads for the benefit of families of minors have uniformly been held to terminate with the arrival at majority of the beneficiary; and by parity of reasoning, a homestead for the benefit of a family of dependent females must terminate when dependence terminates. But dependence upon what—the property, or the applicant for homestead? We confess that it seems more logical and consistent with former rulings of this court to hold that the dependence should be upon the property rather than the applicant. But the question has been positively answered in the case of *Towns* v. *Mathews,* supra, where it was said: 'The general fact of dependency alone would not be sufficient to keep the homestead in existence, because it has to be a dependency upon some person in life entitled, because of such dependency, to take a homestead.' Tested by this rule, then, the homestead in the present case expired with the death of Ezra Mc-Crary in 1885, and the court below erred in holding that it was still in existence." See *Vornberg* v. *Owens,* 88 *Ga.* 237 (14 S. E. 562). In *Neal* v. *Brockhan,* 87 *Ga.* 130, 132 (13 S. E. 283), it was said: "When, therefore, the mother died and the children became of age, according to the repeated rulings of this court the homestead estate ceased and the land became subject to the liens of the creditors. We do not think the fact that one of the minors became imbecile and dependent after the homestead was set apart, but before he became of age, would change this rule and keep the homestead estate alive. When the head of the family, to whom the homestead was set apart, died, the land descended to her children as her heirs at law; and after they became of age the homestead ceased; and if there had been no creditors, the children would have had the right to have the property sold or divided. There being a judgment creditor in this case, his lien, which had been inactive and held off since the homestead was set apart, became active and was leviable when the homestead estate ceased." And see the case of *Sutton* v. *Rosser,* 109 *Ga.* 205 (3), 207 (34 S. E. 346, 77 Am. St. R. 367), where it was held: "A homestead allowed to a widow out of her husband's estate for the benefit of herself and minor beneficiaries ceases when the widow dies and the minors arrive at majority." But it is insisted by the defendant

in error that the dependence here was upon the property, and not upon the life of the applicant for homestead; and we are asked to review the cases of *Towns* v. *Mathews,* and *Haynes* v. *Schaefer,* supra, and to overrule the same, if they conflict with the decision of the court below and with the view taken of this case by the defendant in error. We think they undoubtedly conflict. We have considered the present case carefully, and also the cases asked to be reviewed, and, after doing so, decline to overrule them, and adhere to the rulings made in those cases. It is insisted by the defendant in error, that there is a vast difference between the constitutions of 1868 and 1877 as to the homestead rights of certain beneficiaries; that the constitution of 1868 allowed a homestead to "each head of the family . . of minor children" (Code of 1873, § 5135), and that the constitution of 1877 extended the class of beneficiaries and included "dependent females." Civil Code, § 6582. It is ingeniously argued that if the dependent female under the constitution of 1877 acquired no individual right to the homestead in her own name, it was needless for the head of the family to take out a homestead as having females dependent upon her, but could have it set apart to herself simply as the head of a family, and that would suffice. But the reply is, that under the provisions of the constitution she can only avail herself of the benefits of the homestead because she *is* the head of a family of minor children, or there are females dependent upon her, and it is necessary to allege and show that fact in order to be entitled to the homestead, which is conditioned upon this fact being made to appear. It is argued, further, that if a dependent female received no individual right to the homestead property after the death of the head of the family, the law would abandon and desert her at a time when she stood most in need of its beneficent influence and support. The reply again is, that, in the present case at least, the dependent female is not left helpless and penniless. As an heir at law of her deceased mother, out of whose property the homestead was set apart, she is entitled to an absolute fee in an undivided one-sixth in her estate, and not merely the usufruct of the homestead property. Nor can it be supposed that the other heirs at law of the deceased mother will be less kind and generous in their help and support of this dependent female, who is related to them by blood, than the law itself was, if her share of the estate should

prove insufficient for that purpose. At any rate, the law seems well settled in this State that the homestead estate ceases upon the death of the head of the family in a case like the present, whether the homestead be under the constitution of 1868 or that of 1877. The rule insisted upon in this case would prevent, or at least postpone, heirs at law from coming into possession of their inheritance. Both the claimant and the defendant in fi. fa. were heirs at law of the deceased mother, and each inherited an undivided one-sixth interest in the lands left by her. It follows from what has been said, that the undivided one-sixth interest of the defendant in fi. fa. in the land levied upon is subject to the fi. fa. as against the claim of the daughter, who enjoyed the benefits of the homestead estate as a dependent female during the life of her mother, but who has no further interest in it as such since her death. The court erred in directing a verdict for the claimant.

*Judgment reversed. All the Justices concur.*